Good morning. Timothy K. Talbot for the Appellants and Plaintiffs, Jamie Hughes et al. Could you talk a little louder? The acoustics aren't great. Can you hear me? This case presents several issues, but the central issue is really the proper identification of the plaintiff's regular hourly rate of pay as defined by the Part A Disclosure Act. I was struck that the case went to a jury trial. You hardly ever see these that go past summary judgment. Since there was a jury verdict, we have this very deferential standard. On the issue that you just raised, I don't know quite how you get around the very deferential standard. I just don't understand it. It seems like – let me tell you how it looks to me and then you educate me about how I should look at it. It looks to me like a clever scheme worked out between the union and the city so that the dispatchers could have their cake and eat it too. They get really high pay called regular pay so that they can get the higher retirement, but they negotiate the regular pay so that time and a half overtime is built into it. So they get their overtime and they also get the retirement as though it was not overtime. You could go either way on whether they managed to skate around the law on wages and hours. So it went to the jury, and the jury said it's okay under the Wage and Hour Act. I don't know how you get around that. Let me address first the issue of the retirement. Under State law, all regularly scheduled work hours are to be reported to the public employment retirement system for retirement purposes. The city admitted in the testimony of the fire chief, Gary Gillis, confirmed that the city was misreporting the income of these people. All of that regularly scheduled overtime was, in fact, reportable. You're telling me about what the testimony was. Right. What do I care about what the testimony was? We're supposed to take everything most favorably to the side that won the verdict. Okay. The issue here, though, is that the Fair Labor Standards Act clearly defines as a matter of law what the regular rate of pay is with respect to any hourly compensated employee. You've got a Supreme Court decision in 149 Madison Avenue, and you've got a regulation and a CFR that seem to say this scheme that the union negotiated for the dispatchers is okay. Under the Madison Avenue case or the Asalta case, Your Honor, the parties had agreed to a formula by which you could calculate the regular hourly rate from a salary that both parties agreed included overtime for all of the hours worked. In Asalta, though, the Supreme Court said that the parties did not, in fact, adhere to the agreement that they believed that they were running into. The Court said you have to. The Court must look beyond what the parties purport to do and identify what they actually  And that's the case. Well, here the Court that does the looking is the people on the jury, and they looked. But it's a legal issue. If you look to the substantial evidence in this case, all of the evidence in this case identified that the regular hourly rate was determined from their salary based on a formula of dividing the annual salary by 2912. This Court has repeatedly held in cases such as Marshall v. Chawla and Brennan v. Elmer's Disposal that the employer has the burden to prove that there is a regular hourly rate of pay and that that regular hourly rate is an actual fact, what is actually paid for the first 40 non-overtime hours. And in this case, all of the evidence, the city's payroll records, the city's payroll clerks, the personnel director, every single witness in this case, save for one, their expert, testified that the regular hourly rate was derived from that. And his You're telling us as the jury that we should go with the larger number of witnesses and not the one witness. But we're not the jury. No, Your Honor. I'm saying that the evidence, the expert witness If there's a whole bunch of witnesses on one side and there's one witness on the other, I'm not sure that I agree with that, but accepting your hypothetical or your proposition for the moment, I don't understand why a court would have to say as a matter of law we'll go with the number of witnesses instead of the one. That's not my point, Your Honor. My point is that you have to look at the actual practices of the city. You have to look at the compensation. And when they are paid on a salary, there must be an agreement in advance as to the regular hourly rate. The regular hourly rate cannot be identified from a salary absent a formula. And wasn't there a lot of testimony that the union and the city had worked out the salary based on a regular hourly rate? No, Your Honor. The testimony is unclear as to exactly what happened. The union president testified that she was unclear as to how they were paid, but it was her understanding that the pay was straight time, that there was no overtime or halftime component to it. And, again, getting back to the Did anyone else testify about what the deal was between the union and the city besides her? No. No, Your Honor. That was the only witness that was presented. And, again, it's the city's burden to prove the issue. The expert didn't testify? No. The expert never purported to testify as to the deal. The expert simply did what this Court has repeatedly said cannot be done, which is to come in and after the fact try to create hypothetical hourly rates to give the illusion that an employer complied with the law by simply creating numbers. And this Court has repeatedly said that when people were ---- I had thought the president of the union, the woman that you talked about, testified that the new wage was discussed and agreed upon, and then a city administrator, a guy named Parrott, explained the calculation. Right. Parrott testified that he came up with or tried to come up with a calculation for an amount of salary to pay people. And the union president said, yes, they presented an amount of money to us and said that was going to become the base wage. Her understanding that that base wage was now going to be straight time. But all of this is really not relevant, Your Honor, because the courts and the law say you have to look at what actually happens, not what the parties purport to do or believe that they're doing. Again, this Court in Marshall v. Chawla made that point abundantly clear and was relying upon prior precedent in the Elmer's disposal case, the Brennan case. And they cite also to ---- Let me get back to the facts for a minute. Who is Mary Prosser Strong? Mary Prosser Strong was a union representative, a shop steward, if you will, for a group of the employees. And she said that they are paying overtime in accord with the FLSA. Is that right? She purports to say that, Your Honor. But, again, what people say is not the test. It's what they actually do. In the prior cases, we have employers who come forward and say, well, I intended to pay you in compliance with the law. I thought I was paying you this way or that way. And the Court said if we indulge that kind of after-the-fact rationalization, then the employer can alter the rate and avoid overtime liability. Major, one of the employees, testified that she understood they were rolling the overtime into the base salary and she was getting overtime? What the employees testified to is that the amount of compensation that they were previously receiving for a portion of their regularly scheduled overtime hours, they were told would be added to their base pay. And when I look at that, I say, okay, we had a base pay before. We have a new base pay. The prior base pay covered 40 hours a week. The new base pay is intended to cover 56. The calculation of that, however, did not mirror a full 56 hours. The parties can agree to set a wage in any way they deem fit, so long as it complies with the law. But once you agree on a salary, and the city says we pay only on a salary, you have to be able to identify the regular hourly rate from that salary, and there has to be an agreement as to either the specific rate or the formula to determine that hourly rate from the salary before you work. And this Court has repeatedly, and I can't understate this, that if you have a fixed salary scheme that does not have an identifiable hourly rate or an agreed-upon formula for identifying that, that the plan fails. It fails from its inception because it's a moving target as to whether or not there's compliance with the FLSA because it's time and a half of that rate. In this case, they take a salary, and they essentially divide it by all the regularly scheduled hours worked. That is consistent with both Supreme Court decisions and regulations as to how you calculate the hourly rate. But there must be an agreement on that formula. So the evidence --- I can't follow how to put together what you're saying with the Supreme Court's decision in 149 Madison Avenue v. Esalta and with the reg at 29 CFR 778.309. In Esalta, the parties agreed that there was a formula. They reduced it to writing, and that formula had a component that contemplated stepped-up overtime. So you could take the monthly salary, and you could divide it, for example, if somebody worked 50 or 60 hours, okay? There would be 20 hours of overtime in there. So you'd have 40 hours of regular, 20 hours of overtime. You could add another 10 hours to represent the halftime. I thought that's just what they did here. They worked 56 hours, and they treated it as 40 hours plus 16 hours of overtime, calculate the pay that way, and call it a salary so that they'll get the retirement based on the higher salary. Your Honor, the ---- Which seems to be just what these two authorities, controlling authorities,  Yeah, the difference is if you have 56 hours and 40 is straight time and 16 is overtime and you divide it by 56 hours, that gives you only the straight time rate. You have to include another 8 hours to represent the halftime. No, no, no. Everything over 40 was treated as overtime. That's right. But if I'm working ---- You're saying what we should do now is if you have a formula so that it's 40 at straight time plus 16 at time and a half, what you should do is take the total of 40 times the straight rate plus 16 times time and a half the straight rate, take the sum, divide by 56, and then you have to have 16 times 1.5 times that new hourly rate you've come up with. No, Your Honor, that's not what I'm saying. How do you distinguish that from what you're saying? Yeah. If I take ---- if I work a 56-hour week, I have 16 hours of overtime. If I divide the weekly salary by 56, that gives me a straight time hourly rate. Why would you divide it by 56? That's just what I'm asking. Then you have to divide it by 64 hours. No, no. You subtract 16 from the hours, and then you've got 40 hours. Your Honor, but how do I know what? What am I subtracting? How do I know an hourly rate? Because 40 hours is straight time. At what rate, Your Honor? If I pay $2,000 a week and you say subtract 40 hours, what's the dollar equivalent of that without knowing the hourly rate? I think we worked this out in high school algebra. You have to know. That's why this Court has repeatedly said you have to know the hourly rate. You can't do that calculation unless you're multiplying it by a certain amount of money. And then you can subtract from that amount of money what straight time it was. It's just like the high school algebra problem, 3X plus X equals 12. What's X? I don't know, Your Honor. But I do know what the case law says, and I do know that you have to have an hourly rate and you have to be able to identify it. And you can't start with a salary and start deducting time without knowing how much that equates to. I mean, the Marshall v. Chawla case, again, Elmer's towing say exactly that. Reynolds-Youngerman-Hardwood, the United States Supreme Court, says the same thing. It's an actual fact. So if you go back and you say what are they paying for the first 40 hours, that's the straight time. You don't pay halftime. You don't pay overtime. What are they paying for the first hour of work in the week? That is the regular rate and that is the rate of hard work. Your theory is that the only way you can do this is take their total pay, divide by 56. That's the straight time pay. Multiply by 40, and that gives you the straight pay for the 40 hours. And then to comply, multiply 16 times 1.5 times that rate. Is that right? That's not the only way. That is a common way. The other way would be to have an advance agreement. And you could never have one of these Kelly plans that the Supreme Court and that reg say are okay. You could, actually. If you had the right formula and you had agreed upon the hourly rate in advance. Either you agree upon the hourly rate in advance or you agree upon the formula, which has to include the stepped up. If you look at Assalta and you look at Adams v. New York Juvenile Justice, which the city cites, both of those formulas are very clear. They include an additional component for the halftime in the formula. The city does not include a halftime component in its formula at all. And that formula has to be agreed upon prior to working. That is the formula upon which you create the hourly rate. Counsel, to support your argument, we'd have to disregard the expert testimony in this case, right? The expert is not calculating the hourly rate, so the answer is yes. The expert, by his own statements at trial, not what the city has represented in its briefs, but by his own statement at trial, said, I am calculating an effective hourly rate using some hourly rates that were not agreed upon by the parties, and I'm going through a formula. Where in his testimony, where is that in the record that he said he was not calculating an hourly rate? He – well, he said he was calculating an hourly rate. He did not say or agree that he was calculating the regular hourly rate, if – which is under the law. On page 565, I asked – he has asked specifically. Of the excerpts of record? Yes. In the transcript. No, of the excerpts of record. Are we looking at the top number or bottom number? The bottom number, yes. That's the excerpts number? Right, 0565. I'm looking at it. I don't see what you're referring to. It says 626 at the top, 565 at the bottom, and I don't see what you're claiming is there. You're right. Point to it and then we'll see. Yeah. It's – it's the wrong page. It may be 565 at the top. And I apologize for that if I made that mistake. I'm sure you have. 565 starts the testimony of Arbery Mills. Yeah, that's what we have. I'm sure you have it all marked up and tabbed, so you can just tell us where to look. Okay. I was just trying to come back to that, if I may. Well, if you want to save it for rebuttal, you can. Yeah, I'll – I'll run the rebuttal. Counsel. Good morning, Your Honor. May it please the Court. My name is Joe Quinn. I'm here on behalf of the city of Stock. As the Court has pointed out, this case does come before the Ninth Circuit after a jury verdict, and that jury verdict judgment should be upheld unless there's reversible error, which is error that likely affected the jury's decision. And here, as the Court has already mentioned, the – there was evidence on both sides, and the jury accepted the city's – Make it easy for us. Okay. Lay out the evidence, exactly who testified to what, that will show that there was a formula so that they got straight time for 40 hours and time and a half for the 16. Just lay out exactly what the evidence was, ideally who and where in the excerpt. Okay. Thank you, Your Honor. The evidence was this, that Terry Parker and Mark Parrott, both officials at the city, Terry Parker, the head of personnel, and Mark Parrott, program manager under the city manager's office, testified as to the city's intent with the change that occurred in November of 2000. And the city's intent was that overtime would be rolled into a salary, and there would be no change as to – no substantial change as to the hourly rates. And that was the purposes of the retirement, and possibly to shift to a 40-or-so-hour week rather than the KELF. Okay. Where is that exactly? I really had a hard time finding things. For example, when you said Mr. Parrott explained this all to the union, I couldn't find on either page 227, top number or bottom number, where he explained that to the union. So I'd like to know where Mr. Parrott said that. Okay. That there was no intention to change the hourly rate and he explained that all to the union. Okay, Your Honor. I'm really having trouble. In the reporter's transcript numbers? Yes. Okay. Wait, wait. Which volume? What are we looking at here? If I could just find the reporter's transcript. Okay. So in the reporter's transcript. We don't have things organized that way. We have excerpts of records. We're really supposed to talk about excerpts. No, that's correct, Your Honor. I have to work a little bit backwards here. Okay. So Mr. Parrott's testimony in the excerpts starts at page 104 of the supplemental excerpts of record. Okay. Got it. Okay. And at page ‑‑ sorry. Okay. So the bold number is down at the bottom. Correct. Okay. And so the testimony starts on that page. But I'd like to draw the Court's attention to page 111. All right. Where in at line 15, Mr. Parrott testifies, what I did is I calculated how much they were currently being paid and dispatched, well, shift work is relatively complicated. That answer, which goes on to page 112 to line 8, is kind of the summary of what Mr. Parrott was intending to do with the November 2000 change. So that's the intent. And then ‑‑ I'm sorry. Then the agreement, Mr. Parrott talks ‑‑ goes on to talk about the negotiations or discussions with the union, and Ms. Storm also testifies as to the negotiations and discussions with the union. So the agreement was that overtime would be rolled in. And then ‑‑ Where is that now? Okay. Okay. So that's in Elvis Storm's testimony. Sorry. So what we've got from this first fellow, Mark, is he carefully calculated what the regular hourly rate was? Correct. Correct. And then what did Ms. Storm do? And Ms. Storm testified as to the negotiations. Well, actually, Mr. Parrott also testified as to the negotiations. So we can stick with Mr. Parrott's testimony. We have excerpts and supplementary excerpts. That's what we use. Yes. Sorry about that. Okay. I think you said Mr. Parrott testified around page 527. I just couldn't find the thing where he carefully explained this to the union. Where he carefully explained the methodology? The negotiations. The negotiations. Okay. I think it starts at 115 where it talks about the negotiations with the union. Thank you, Your Honor. That's right. It starts at page 115 of the supplemental excerpts of record. And then as the court pointed out, Linda Major testified as to what happened with her paycheck and her understanding that over time was rolled in. So in essence, that's what happened here. What was taken was what was the effective hourly rate in November 2000 before the change. Mr. Parrott preserved that and rolled in over time for the regularly scheduled overtime, which is averaged at 56 hours a week. Do I understand this right, that what you've got that the jury could hang its head on is page 117, lines 22 through 24. The hours over 40 were built into the base. The net of those two was the same. They were being paid the same. That's correct. In context, meaning they were getting straight time at 40 overtime for the extra 16, same outcome. Exactly. So if we need to say in a disposition, here's what the jury had to hang its head on, that's where we go? That's correct, Your Honor. Is there any more we need or more that you have? I'd submit that there's really nothing more that, given the standard of review, that there's nothing more that the Court needs. The Court doesn't even really need to go to Mr. Cohen's testimony. But if it did, all Mr. Cohen did was spell out what Mr. Parrott testified to. All the premises were already before the jury, and Mr. Cohen just performed simple calculations that really anyone could have. Well, if anyone could perform them, why did you need an expert? Well, Your Honor, you know, frankly, that's a good question. We did notice an expert. The plaintiffs did challenge them. Judge Englund, you know, overruled the challenge. So we did present that testimony by Mr. Cohen. But Mr. Parrott could have done the same thing. He was doing arithmetic? Yes. Some jurors feel comfortable doing arithmetic. Exactly. I mean, you know, it's always a little challenging doing arithmetic in front of people. But, by the way, X equals 3. All right. And, well, really, if the Court doesn't have any further questions, the City of Stockton would submit and ask the Court respectfully to affirm the jury's judgment. Thank you. Thank you, counsel. In reviewing the record with respect to Mr. Cohen, the question was not exactly the one that you asked me about. The question was whether he had any expertise in calculating the FLSA, and the answer to that was no. But on the precise question, was he calculating the regular rate, there's nothing in the record indicating that. I mean, he wasn't specifically asked that. It looked to me like he was just doing arithmetic. He was doing the 10th grade algebra in case some jurors were uncomfortable with 10th grade algebra. Well, let me go to that in a couple points. Mr. Parrott's testimony, it is actually an incorrect assertion that Mark Parrott calculated wages based on a 56-hour work week. The testimony actually said that the City routinely deducted three hours of sleep time for every 24-hour shift.  That's a jury question. All of that was presented to the jury, and the jury could determine whether or not what was actually calculated included the overtime or did not. So that's a jury argument. Well, it might be a jury question on some underlying facts, but as when you look at whether the FLSA says the regular rate is a legal certainty, the underlying facts have to be looked at de novo because the ultimate conclusion is a legal conclusion. And this Court in Chawla v. Marshall, I keep repeating this case, when you ask what the plaintiffs knew, what the parties knew, the Court specifically said there that the burden is on the employer to establish the regular hourly rate so that we avoid the ambiguities associated with employees being asked what they understood, what they knew. But you have a jury trial to do just that. Well, but if we look at that, one of the errors on appeal is that the only evidence presented of a regular rate was the evidence presented by the City's payroll people, Nan Burnside, Judy Ng, their Director of Personnel, Terry Parker. All of the personnel documents, the payroll records, every one of those, those documents, this is the regular rate. That is the substantial evidence. There was no evidence of any other rate that qualifies as the regular rate under the FLSA presented in this trial. And so even if you take the substantial evidence test, there is no substantial evidence in this record of any other rate that qualifies as a regular rate under the FLSA. And if you look at the collective bargaining agreement actually between the parties, there is a provision in Section 7.3, this is page 272 of the excerpts, where the parties actually agreed that from the weekly salaries or the monthly salaries, an hourly rate can be determined and that the parties will pay in compliance with the MO or with the FLSA. Counsel, that Challa case that you mentioned, I had overlooked it, frankly. So I just looked in your brief. It's cited at one place, page 57. And all it's cited for is this general proposition that the law is designed to address the evil of overwork. We all know about that. And the purpose requires the payment of premium over time regardless of the level of the regular hourly rate. Thus, it doesn't matter that the regular hourly rate is fair or non-exploitative. I don't get why that helps you. Right. That cite there was for that narrow proposition, but the case more broadly is reiterating the principles cited in the Brennan v. Elmer's disposal and the Brennan v. Valley, which are the same. I guess I missed that because the brief didn't say so. Right. We didn't – the brief doesn't tie back to that because they're all citing. They're cross-citing to one another. But those principles are clearly stated. And the Elmer's towing is the first one. And then Shawla, in fact, says we don't even have to get into any of this other stuff because they haven't shown the hourly rate. Thank you, counsel. Hughes v. City of Stockton is submitted.
judges: Kleinfeld, Rawlinson, Restani